Now I'm going to call Appeal 25-2021. In re Bernardo Romero. We'll begin with oral argument from the appellant, Mr. Schaller. May it please the court and counsel, I am Robert Schaller, appellant counsel for Mr. Bernardo Romero, who is the bankruptcy debtor in the underlying bankruptcy case. Mr. Romero filed bankruptcy to try to protect his house and save it from losing it because of a tax sale that had been conducted by the county with the tax purchaser being the appellee. The bankruptcy case was following the Seventh Circuit's Lamont decision that required it to be filed prior to the tax redemption expiration date, which we did. Just to dial in, Mr. Schaller, you're not arguing that the 12% interest rate under Section 355C applies. You're arguing that the till rate applies. That is correct, Your Honor. Is that a change in your position on appeal? No. And in the objection that was raised underlying, we had two positions. One of it was the redemption 12%. The other alternative argument was till. And on this appeal, we are only asserting that till is the correct rate. Understood. The tax claim argument that is ventilated in the amicus brief, which was very well done, wasn't certified for appellate review, and it wasn't in your statement of issues. Should we consider that argument? I believe the court does have the power to do that, the jurisdiction to do that. And how? I would cite the Trump v. Illinois case, which was just decided recently, which I believe came not only from the Supreme Court, but out of this circuit. And in that, it allowed the... The amicus raised the issue that was decisive. Yes. Excuse me, Your Honor. The amicus brief filed by Professor... Lederman. Lederman, thank you. Yes. Raised the issue that the Supreme Court found decisive. Yes. And that was raised not by the original counsel, but by the amicus. And I believe this court does have the power to consider it. And I think it should consider it, because it is a situation where amicus raised it fabulously, and then it gave a chance for the appellee to respond, which they did in about 28 of its pages, and it allowed us to reply on this. So I think from the court's point of view, it is fair that since everybody had a full opportunity to respond to that issue, and we embraced the amicis brief. So back to the bankruptcy case, we offered the till rate of interest, and the bankruptcy court did not like that. And they were citing Section 511 of the Bankruptcy Code, and 511 basically says, if it's a tax claim, go to the state to find out what the state has said, if anything. 511 doesn't require the state to provide interest to a tax claim, but it allows it. And I'll give you two examples where states have actually done that. In the Ohio statutes, it allows interest to be paid, and it's after a bankruptcy has been filed. And if Illinois had done that, then I wouldn't be here today. In Illinois, the case is In re Bowers, B-O-W-E-R-S, that is cited on page 26 and 27 of the appellee's brief. Similarly, and that was decided, by the way, by the Sixth Circuit Bankruptcy Appellate Panel. Similar, another state had done something that if Illinois had done, we wouldn't be here, and that is Texas. In the state of Texas, they have a statute that says a tax investor can loan money to the homeowner, and that money is used to pay the taxes. And when the investor does that, by statute, he's subrogated to the rights of the county. Specifically, subrogated to the rights and remedies of the county. And that case and those facts can be found in the KIZME case, K-I-Z-Z-E-E, which is cited on pages 26 and 27 of the appellee's brief. That's the Fifth Circuit case. Excuse me? That's the Fifth Circuit case. That is the Fifth Circuit case. Yes, Your Honor. Are we going to find ourselves in a position of creating circuit split if we follow that? No. No. Because they're looking to individual Texas law or earlier the Ohio law, this court has to look to Illinois law to see, is there any issue here? Has the Illinois General Assembly given interest to somebody, to the tax purchaser? And the only place that, in the whole comprehensive code, the only place that interest is given from the homeowner to the tax purchaser is the redemption statute, the 21-355. And if this court were to follow that, the most this court would say is the seven days between the filing date of the bankruptcy and the expiration of the redemption. So maybe this court could say, we'll give them interest for those seven days at the redemption provision. However, in the Lamont case, they ruled that this is not a redemption case, and the redemption statute shouldn't apply. The bankruptcy court agreed, saying redemption statute should not apply. So that leaves no statute by Illinois giving interest to the tax purchaser. Mr. Schaller, let me ask just a very elementary question here. What is a tax claim for purposes of Section 511? And in particular, how is the tax purchaser situated differently from the county to whom the taxes are owed? I know that's – maybe you have a sweeping answer to that, but I'd like you to sort of summarize. The Ebbets and Perkins brief certainly addressed that, and I'd like to address it as well, Your Honor. We believe that the issue of a tax lien is something that's created by statute, but a tax claim is actually a concept in the bankruptcy. The claim is defined by Section 101 of the Bankruptcy Code. Basically, very broadly, all claims that people have all interests, whether against the person or against the property. So in the Lamont case, they clearly said that it is a claim, and that was the issue in Lamont. Is it a claim? The issue in Lamont wasn't, is it a tax claim? That wasn't a 511 case. It was just, was it a claim at all? Lamont does hold that a tax lien is not extinguished in a tax sale. So doesn't that mean – how can you reconcile appellant's position with Lamont? I believe that the county's tax lien was extinguished, not transferred, just extinguished, and that is in the Lamont case. And then what the appellee holds is some sort of special sui generis – I think Lamont called it a unique statutory interest. I think that was the phrase that they used in the Lamont case. So it is not an assignment. It is not a subrogation. It is a separate, unique, statutory authority created by Illinois General Assembly. That is not a tax claim. Can you return to Judge Hamilton's question, though? Because I think one of the points that was made in Lamont is that the purchaser essentially stands in the shoes of the county. And the second part of his question there about how is the tax purchaser situated differently than the county is getting at that, I think. I think that the metaphor, stand in the shoes, was a poorly chosen metaphor. I think it was, as many metaphors are, broader than need be. But let's please be specific. And let me just throw out one example I'd like you to consider as we get at this. It's my understanding that under certain circumstances, the taxing authority can wind up with an in personam claim against the taxpayer. Correct. I don't think that's true of the tax purchaser, but I'm not sure and would welcome the views of counsel. That is just one of many points why the stand in the shoes metaphor is poorly done. Okay. That's one. What are the others? Right. Another one is who gets the right to foreclose on the property? The county does. When there's a tax sale, the tax purchaser doesn't get the chance to foreclose on the property. A third one would be what happens if the county just doesn't do anything? They just sit back and let the delinquent interest rate continue to increase and increase. They can go forever. I'm sorry. The tax purchaser is limited to the three years of interest in the tax redemption statute. They can't go on and on. Another difference between the two is the tax purchaser can get a deed. The county can't get a deed. And probably the biggest one of all is the tax purchaser can go and get and just basically steal, from my point of view, the equity in the home. As in this case, there's about $200,000 of equity in the home. The county can't do that. So when the court uses the metaphor, stand in the shoes, I think it was a poorly chosen phrase. It does stand in the shoes for the very limited issue in Lamont, and that is, does the tax purchaser have a claim in bankruptcy? And to that extent, yes, they both have claims. But it is not standing in the shoes. And that should be disregarded. And I think that is one of the biggest issues that the appellee is relying on, that metaphor. It was unnecessary and inaccurate. Does this come down to whether the Chapter 13 looks closer to a delinquency or closer to a redemption? I think it's not a redemption at all. And if it is a delinquency, the person or the entity that gets the interest is the county. It is not. And that leads to the very important section of the property tax code, 21-15. And that is something that was missed by not only Judge Castling in the bankruptcy court, but many of the judges that basically give three, four-paragraph decisions. And how was it missed? Judge Castling truncated 21-15 and only used that provision to talk about the 18% interest, which is technically in the statute 1.5% per month, but 18 per annum. He missed the vital sentence at the end of the statute that says, quote, all interest collected shall be paid into the general fund of the county. He missed that. He totally omitted it. And as we know from statutory construction, the canons, you can't just render language superfluous. And what Judge Castling basically did is he wiped out that language and made it meaningless. Because that interest provision, that statute is interest to the county, not to the tax purchaser. And now maybe Judge Castling thought of something else. Maybe he was implicitly legislating from the bench and rewriting that provision that would say, all interest collected shall be paid into the county general fund, comma, except if there's a bankruptcy case filed, in which case the tax purchaser should get interest. Well, that's absurd, and I doubt Judge Castling was thinking that. But that would be the logical result. Mr. Scheller, can I ask you a question about – it's kind of getting, I think, at what you're talking about. So Corona Investments, the purchaser here, right? I understand that they purchased the taxes, so to speak, for a few tax years, like 2018 through 2021. Is that factually accurate? Technically, they buy the taxes at the tax sale for 2018, and they pay what they call subsequent taxes in the prior years. Okay. Subsequent years. Okay. There's no tax sales, just that one sale. Okay. Let's suppose, for example, that Mr. Romero failed to pay the property taxes in one or more of the subsequent years, but they weren't sold. Are you with me on the assumption? Yes. So let's just call that like 2022 or 2023. So in that fact pattern, if the taxes weren't sold, the taxes would remain with the county, correct? That's correct. What would the interest rate be? It would be the section 21-15. The 18%?  That's correct. Okay. And what, if anything, in your view, does that tell us about the answer to the question here? The 21-15 applies only to the county, and in no way applies to the tax purchaser. And if the Illinois wants to have a statute that gives interest to the tax purchaser after the redemption expiration date, they can do what Ohio has done, or they can do what Texas has done. So you're saying 21-15 doesn't apply, the redemption provision doesn't apply, we're not talking about a tax claim, so we end up back at the Supreme Court till rate. That's right. All roads lead back to the default interest rate given to secured creditors as enunciated in till. Would you like to reserve the remainder of your time? Yes, I am. Thank you, Your Honor. Thank you. We'll move now to argument on behalf of the appellee, Mr. Bach. May it please the Court. My name is Paul Matthew Bach, and I represent the appellee, Cremona Investments, LLC, in this proceeding. This case stems from the case of Bernardo Romero in the bankruptcy court. Mr. Schaller summarized, and I agree with a lot of the basic facts that he talks about, and I'm going to try and go so I can get to answer a lot of your questions that I'm sure you haven't. So the primary issue before this court, as the court has already talked about with Mr. Schaller, is what the interest rate should be in a claim. This court in Lamont dealt with a lot of previous issues. I think that Lamont basically carries a day in a lot of these things. A lot of my answers to your questions are going to refer back to Lamont. I do believe that the Illinois statute that you were just talking about with Mr. Schaller, 35 ILCS 200-21-15, does apply. And I believe that a great summary of that is in Judge Cleary's decision in Ray Drake, which is a primary decision that Judge Kathleen relied upon. One of the things, and I want to dwell just briefly into the issue of the amicus curiae issue that has come up. And I think it leaves my client in a very difficult position, because the arguments in the appellant's brief and the arguments in the amicus curiae brief are decidedly different and bring up other things. And it puts my client into a very difficult position at that point, because I read thoroughly the handbook for the Seventh Circuit Court of Appeals. I can sympathize with your position, Mr. Bach, and in private practice have encountered similar sorts of shifts in issues. But we granted interlocutory review in this case to get the answer correct. And frankly, I don't care in whose briefs or exactly when it was raised, as long as everybody has had a fair opportunity to be heard on it. So let's focus on getting the answer right, because it applies to so many potential Chapter 13 bankruptcy cases. I don't disagree with you, Your Honor. I just want to make one related point, and that's why I wanted to talk about it at the beginning, is that it puts, as I mentioned in the handbook, I look at the handbook, it says don't file a motion in regards to the issue. I didn't. I put it in my brief, but I may have dealt with, if that had been in the appellant's brief, which is what's required by case law, and we can agree upon that, at that point I may have answered some of those questions differently and dwelled more into those times. I'm happy to discuss about those issues now, but that puts my client into a bad position when we have to directly respond to things that are in an MS Curie brief that are not in the appellant's brief. And I will move on and talk about Section 511 at this point, but I want to make that point. So starting with Section 511A, which is the crux of what a tax claim here is, Congress adopted that as part of back seat in 2005 when they made all those changes to the bankruptcy code. And in that, Congress enacted 511A to establish uniform treatment of tax claims in bankruptcy, requiring that the rate of interest shall be determined under non-bankruptcy law. And we'll talk about that non-bankruptcy law, but first I want to talk about 511, that that Section 511 applies. Multiple courts have recognized that tax purchasers constitute tax claims. I would cite primarily to Lamont in that regard. My client's position is the bankruptcy court correctly found that claim holders who have acquired in rem liens for certificate of purchase at an Illinois tax sale hold tax claims against the property of a debtor's estate. This determination aligns with the broad congressional intent behind Section 511A to include claims by private parties when they arise from tax obligations. In my brief, I mentioned that there are specific places where Congress has made determinations about, in certain sections, what a priority claim will be, a determination that applies to governmental entities as opposed to non-governmental entities. That's not in Section 511. Congress knows how to do that, how to put these things into the bankruptcy code or other statutes when they want to, and when they don't, that is significant. The Supreme Court has told us in the St. Germain case, and in other situations, that the plain meaning of the statute controls. And here, the plain meaning has a tax claim. Now, arguably, and I'm not trying to dispute that, the word tax claim is not mentioned in the statute. But I would posit that just because it's not in the statute doesn't mean that it doesn't include it. And here, a tax claim, a tax claim, there's no question that we can dwell into, you know, what a certificate of purchase is, what Mr. Shaler was talking, the difference between different statutes. Every state's creation is a little bit different. In Illinois, you know, as I say in my brief, it's a personal property that's purchased. And so my position is that it's a tax claim. Can I ask you to focus on the distinctions that your opponent's counsel raised? It seems to me pretty obvious. The position of the tax, whatever it is that the tax purchaser has, has its origins in a tax, delinquent taxes, historically, right? Right. But it's not subrogated. The purchaser is not subrogated to the rights of the county under Illinois law. And the amicus and Mr. Shaler have identified, I guess, by my current count, five. There may be more, but five significant differences between the position of the county, which would clearly have a tax claim against the debtor, and the position of a tax purchaser, namely whether there's a potential for an impersonal claim, who can foreclose on the property, what happens if the county does nothing versus what happens if the tax purchaser does nothing, whether the county or tax purchaser can get a deed, and whether the tax purchaser can acquire the equity the county cannot. That's my summary of those. Those sound to me like reasonably significant differences that might well distinguish us in Illinois from the New Jersey and Texas standards. I'd like it if you could address the significance of those differences. I'd be happy to. I'd be happy to, Your Honor. The first thing you have to realize is that Mr. Shaler is not quite correct, that the government here could not obtain the equity. The reason is that we have something called the Cook County Land Bank. Especially in Cook County. The Cook County Land Bank, especially now in the last couple of years, a statute was changed two or three years ago that took away the scavenger sale. This was not a scavenger sale. This was an annual sale. In the scavenger sale, it used to be that it was done differently, and I don't want to dwell into those differences. But in the scavenger sale, you would pay the amount of the delinquent taxes as a base, and you can do initial and base. Now, anything that would qualify for the scavenger sale. The scavenger sale would be things that have more than one year's old. At the annual sale, they can only offer taxes which are delinquent in that particular year. So if someone had a whole bunch of taxes from 2013 to 2018, those would all be under the scavenger sale. Automatically now under the statute, those items now go to the Cook County Land Bank, and the Cook County Land Bank can then obtain title to the property. Now, they don't have to accept it on every piece of property. There's many properties in Cook County where, quite frankly, the Cook County Land Bank does not want it at all. And so that is one of a particular difference. The county also charges 18% on any amounts that are not made. And as Mr. Schaller alluded to, when a tax purchaser purchases an amount, let's just say here is the 21, 22 taxes, and then they pay the subsequent taxes, those subsequent taxes can also be paid by the homeowner or some other party, and the tax purchaser has to wait a certain time after the due date in order to purchase that. So those are significant differences which need more detail. I will not dispute that the Illinois property tax system is inordinately complex. Thank you. I will not dispute that, and probably unnecessarily. As you probably guessed, all the cases that I cited below were all involving me, so not trying to put a pat on my back, but I do a lot of these cases, I understand it, and I can respond to that question, but it is complex, and even the people that are experts had trouble with some of these technical things. What would the answer be if there's no bankruptcy? In terms of? Interest rate. It's different under that. Under the state. If we just strip the bankruptcy from the fact pattern. After the redemption date, the tax purchaser would then go and petition for a tax deed. So there's no additional interest because then the statute provides that within three to six months of the redemption date, they have to file a petition for tax deed. This is all stated in Lamont, and then thereafter, once that redemption date applies, that they file an application for issuance of tax deed. Yeah, so that's the way I read it, too. It doesn't really come up, right? If you go through the tax deed process, then you're putting yourself in a position of getting title. Right, and the other thing with that, Your Honor, is that the tax purchaser only has a year unless they told that period to obtain the tax deed. So there's a very limited time period. They just can't hold on to the certificate and then apply for a deed five, ten years later. So there's a very limited time in the statute. It's very specific about the timing, and that has to do with whether it qualifies for a sale in error, which is also a very complex question. Mr. Brock, would you agree that in this case, Corona's position is over-secured? Absolutely, because typically in these cases, and we're talking about this case but other cases, typically most of these cases, there's not a mortgage. I do a lot of these. There's just no mortgage, and generally it's only the tax. There may be sometimes. I would say in about my cases, about 5% of them have mortgage. For the most part, it is just that the tax obligation may be something smaller but usually not. So you get the entire equity of the property if you get the tax deed. That's true. For the price of the delinquent taxes and interest and so on. Yeah, but in all things fairness, I would tell you is that most of my clients, and there are a lot of other ones who do not use me, so I can't say that. I probably have a good part of the bankruptcy type things to do that. But in a lot of them, these things are all worked out. Many times, Mr. Scheller, we've sold property. Certainly the bankruptcy gives the debtor an option to do a lot of things. The problem is that people think that sometimes they can have their cake and eat it too, and they really can't afford it, and that's the crux of the system. You have to remember the whole purpose of the Illinois property tax system is to raise revenue. Especially in this area, the southern suburbs really need the money when there's no tax sale. They don't have revenue coming in because unfortunately, and we can all agree that everybody should pay their real estate taxes, but that's quite not happening. Even with the 18% going to the county, an amazing number of people still don't pay their real estate taxes, and that is what you have to keep in mind that the whole system is there. I'm running short on time, and I thought we should at least give me a minute to talk about the fact that I will say that the case law, Mr. Scheller says it's not a redemption. I don't disagree with him. Lamont says it's not a redemption, that you're treating a secured claim, and I don't disagree with that assertion at all. But that's why 355C and that part of it doesn't apply. The case of Abilamil, which has come up a little bit, did not deal with dealing with the 21-15. It only dealt with that other issue. Can I pause you on that?  Chief Judge Brennan may give you another. I just want to make sure. The reason you're saying that the redemption provision, that's 21-355? That's the one that doesn't apply because that deals with redemption. You're just saying the reason it doesn't apply is because it's entirely counterfactual here. Correct. Right, and I think Mr. Scheller agrees with that. It's just not triggered on the fact pattern, and so among the options we're picking from to try to figure this question out, you rule that one out because it's counterfactual. Right, and I agree with that, and that's why that Abilamil case that was Mr. Scheller and myself appealing, that we dealt with that case, but that's why it doesn't apply. In my position, it doesn't apply because in that case, the court did not consider the statute that we're arguing about here, 21-15. Okay, I know what you're talking about. Villasenor, it's a bankruptcy court. Villasenor, I apologize. I know what you're talking about. Okay. Do you want to take one minute and finish up? I would be happy to. I see the zeros, and I'm not going to try and overreach my stay, as they say.  So, and I wanted to, the one thing is that you spent significant time with Mr. Scheller about his saying in Lamont about that the words that stands in the shoes of the county was incorrect. I really believe that that is correct. The answer to his question about the language in section 21-15 is because of what it says in Lamont. Lamont clearly says that the tax breacher stands in the shoes of the county, and I don't know if you could say that the county, that anything else is possible in that instance because the rights that the tax breacher has all stem from the rights that the county did, and what they got sold is a certificate of purchase, which allows them to stand in certain, what the complex statute allows, allows them to stand in the shoes of the county. That being said, that makes it, so there's no question that this is a tax claim in section 511, and then we have to look at it on bankruptcy law. As Judge Cleary and all the other cases that I have attached in the appendix to my brief have said, they've all said that that is the answer, specifically in Ray Paul, which is a transcript which I attached from Judge Golgar, specifically answers that question and relies upon Lamont. That's what Lamont says, that these issues come from the county, and that's what it is. I will finish up because I don't want to overstay my welcome too long. Thank you very much, Mr. Bach. Thank you very much. Mr. Schaller, we're going to go back to you now for rebuttal, and we'll grant you four minutes of rebuttal time. Thank you. I don't think this case is a hard case at all. I think logically it's actually very simple. The very simple is, assuming it's a tax case, which we don't, but just assume it is, this court has to look to see Illinois law and find somewhere in Illinois law that gives interest from the homeowner to the tax purchaser. The only one that applies would be the tax redemption one, which we've all ruled out. Council has ruled out. I believe the court has ruled it out. The bankruptcy court ruled it out, and certainly we ruled it out. It is not a redemption case. There is no other place in the Illinois tax code that grants interest to the tax purchaser from the homeowner. And when there is no such statute, as there is, for example, in Ohio or as there is in Texas, as we talked about, then it goes back, the road leads back to the till default rate by the U.S. Supreme Court, and that is prime plus a risk factor. And that's to be determined in each case on an individual case-by-case basis by the bankruptcy court. My judicial reaction to that rule is sort of yikes, right, the idea that you would custom tailor an interest rate for every case. As a practical matter, are bankruptcy courts kind of working out rules of thumb, particularly for these kinds of typically over-secured claimants? Rules of thumb as to what the appropriate interest rate is. Yes, it's an evidentiary hearing, and the judge will hear facts of each individual case. So, for example, a hearing on the till rate in a car case would be different than a mortgage case. In a car rate case, they would say, oh, this is an appreciating asset and there might not be enough money to pay the creditor if the car gets in an accident or goes down in value. In a house case like this, there is no mortgage, there's $200,000 of equity. So the risk factor would be a lot lower. But that's for the bankruptcy court to decide on a case-by-case basis, and they do that all the time. And in every till case, they do that all the time. And, in fact, in this particular case, Judge Castling reserved on the cost section of the claim the till rate. And he's going to have a hearing on the till. I mean, he retired, but his replacement. He's going to have a till. In the actual order, it is a till rate for that section of the cost. So the courts do it all the time. You just look at the nature of the asset in question, and then each side there's an adversarial presentation. Yes. What's the risk that the creditor will not be paid? So they certainly will look at the equity of it, and they also look at how much income, how steady the job is. What's the likelihood of success in the Chapter 13? Those are all issues for the bankruptcy court. And, frankly, this court doesn't need to decide this. What I think the court needs to decide is, what would the Illinois Supreme Court do if they were interpreting this law? Yeah, that's an interesting way to frame it. Can I ask you a question about that? Yes. Do you even think it's possible in a circumstance like this? And the reason I'm phrasing it that way is because of the bankruptcy law overlay. Is it even possible to certify the state law question to the Illinois Supreme Court? Here's why I'm asking that. Because in cases where there's a lot of uncertainty, and it's a recurring question, and it's a significant question, we will certify. But I've wondered, in preparing for the case, is it possible here, or would the Illinois Supreme Court say the bankruptcy law is federal law, and the bankruptcy law overlay to this makes the certification almost make no sense to us? We don't know what sense to make of the question you're asking us. Well, first, you don't need to certify it because I think there is. No, I know. But let's assume you certify, and we have filed a motion to certify to ask you to certify. You think you can? Yes. Or would the Illinois Supreme Court say, we don't have any idea because we don't do federal bankruptcy law? Well, we're not asking to interpret federal bankruptcy law. We're asking the Illinois Supreme Court to interpret, does any of the Illinois statutes give interest to the tax purchaser? That is an Illinois question. Okay, but that's why I asked your colleague in the context of what would happen if we strip bankruptcy from the fact pattern. That was animating that question. And if we strip bankruptcy from the fact pattern, his answer seemed accurate to me. It goes through this tax deed process. Yes, and why it's accurate is because there's no interest being paid to the tax purchaser after the redemption. They just get the deed. So the reason that this court can't find, and the appellees not cited, nor have I cited, any Illinois Supreme Court or any Illinois appellate court case that gives interest to the tax purchaser after the redemption is because there isn't any. And that's not an accident. The reason is the code structure of the property says, you only get it for three years, Mr. Homeowner. After that, the deed goes over to the tax purchaser. There is no interest in there. So if you did certify it, what I think the Illinois Supreme Court would say is it would agree with us that says there is no provision anywhere in the code that gives interest after the redemption expiration date. Therefore, there is no interest. I think that's the conclusion that would be reached. Thank you, Mr. Schaller. Thank you, Mr. Bach. Just 30 seconds to ask, and that would be we ask that the bankruptcy court order be reversed and remanded to the bankruptcy court for consistent with your ruling. Very good. Thank you. The case will be taken under advisement.